**INTERNAL REVENUE SERVICE,**
**Appellant,**

v.

**Thomas R. NOLAND, Trustee, Appellee.**

**No. C–3–92–304.**

United States District Court,
S.D. Ohio,
Western Division.

Sept. 21, 1993.

---

4. In fact, the Trustee is not trying to enforce *any* contract against Sneed.

Pamela M. Stanek, U.S. Atty's Office, Dayton, OH, Leslie M. Singer, U.S. Dept. of Justice, Tax Div., Washington, DC, for IRS.

Thomas Richard Noland, Altick & Corwin, Dayton, OH, for Thomas R. Noland.

## DECISION AND ENTRY AFFIRMING THE DECISION OF THE BANKRUPTCY COURT; JUDGMENT TO BE ENTERED IN FAVOR OF APPELLEE AND AGAINST APPELLANT; TERMINATION ENTRY

RICE, District Judge.

This is an appeal by the Internal Revenue Service ("IRS") from a decision by the United States Bankruptcy Court, subordinating the IRS's claim for tax penalties to the priority of the claims of general, unsecured creditors. This appeal arises out of a bankruptcy petition under Chapter 11 of the Bankruptcy Code, which First Truck Lines ("FTL") filed on April 10, 1986. After filing the petition, FTL continued its business operations as a debtor in possession. However, during its post-petition operations, FTL did not pay to the IRS the FICA and FUTA taxes which accrued. FTL discontinued business operations, and, on August 1, 1988, the Bankruptcy Court converted the Chapter 11 proceedings to a Chapter 7 liquidation.

After this case was converted to a Chapter 7 proceeding, the Bankruptcy Court was called upon to distribute, among the various parties filing claims, the property of FTL's estate. The IRS had filed a claim for the unpaid FICA and FUTA taxes, interest on those taxes, as well as penalties on those taxes ("tax penalties").[1] The IRS further

---

**1.** The IRS filed a claim and an amended claim for taxes, interest and tax penalties, seeking the sum of $128,756.64. The trustee argued before the Bankruptcy Court that the amended claim

sought to have the Bankruptcy Court hold that all three components of its claim were entitled to priority as administrative expenses. The Bankruptcy Court agreed with the IRS that the three components of the IRS's claim were administrative expenses; however, pursuant to § 510(c) of the Bankruptcy Code, 11 U.S.C. § 510(c), that court held that IRS's claim for tax penalties should be equitably subordinated to the status of the claims of general unsecured creditors.[2] Thus, the IRS's claim was given priority for the unpaid taxes and for the interest on those taxes; however, its claim for tax penalties was not given such priority. The Bankruptcy Court subordinated the IRS's claim for tax *penalties* because, unlike business creditors, the IRS had not suffered an actual pecuniary loss with regard to the penalties. In other words, the IRS's claim for tax penalties, unlike those of all business creditors, did not arise after the surrendering of a valuable asset to the debtor.

■ Before this Court, the IRS presents two arguments, to wit: 1) that administrative expenses can never be equitably subordinated; and 2) that, if such expenses can be subordinated, the Bankruptcy Court improperly subordinated the tax penalties in this case. As an initial matter, the Court will set forth the familiar standard against which it must review the Bankruptcy Court's decision in this litigation. This Court reviews the Bankruptcy Court's findings of fact under a clearly erroneous standard and conducts a *de novo* review of that court's conclusions of law. *In re Caldwell,* 851 F.2d 852, 857 (6th Cir.1988). *See also,* Bankruptcy Rule 8013.

■ *First,* the IRS argues that the tax penalties are administrative expenses and

that such expenses are never subject to equitable subordination, because they are given such a high priority in § 507 of the Bankruptcy Code, 11 U.S.C. § 507. Although the tax penalties were administrative expenses,[3] this Court does not agree with the IRS that such expenses are never subject to equitable subordination. This argument presents a simple question of statutory construction. This question, like every question of statutory construction, compels this Court to determine the intent of Congress. The starting point of that analysis is, of course, the language of the statute. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). When construing the Bankruptcy Code (and other statutes), the Supreme Court has cautioned that that inquiry must end "when the statute's language is plain." *Id.* The provision which this Court must construe is § 726(a) of the Bankruptcy Code, 11 U.S.C. § 726(a), which governs the distribution of the property in a Chapter 7 debtor's estate. Section 726(a) provides, in pertinent part:

Except as provided in section 510 of this title, property of the estate shall be distributed—

(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title.

Section 507 is the provision by which administrative expenses are given priority. Section 510(c) of the Bankruptcy Code plainly confers upon the court the power to equitably subordinate claims.[4] Given the plain and clear language of § 726(a), it is simply not possible to conclude that administrative expenses are not subject to equitable subordination. Moreover, other courts

---

was not a proper claim; however, that court concluded that it was a proper claim. Accordingly, that question is not before this Court, and the Court will treat the two claims (original and amended) as one.

2. The Bankruptcy Court's decision is reported. *In re First Truck Lines, Inc.,* 141 B.R. 621 (Bkrtcy.S.D.Ohio 1992).

3. Section 507(a)(1) provides that expenses allowed under § 503(b) are administrative expenses. Section 503(b) provides that certain taxes and related penalties, including those herein,

are administrative expenses. The Appellee concedes that the tax penalties are administrative penalties. *See* Doc. # 6 at 2.

4. Section 510(c) provides, in pertinent part:

Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest.

have concluded that administrative expenses are subject to equitable subordination. For instance, in *In re Import & Mini Car Parts, Ltd., Inc.*, 136 B.R. 178, 181 (Bkrtcy. N.D.Ind.1991), the court rejected the proposition that administrative expenses cannot be equitably subordinated, stating:

> [T]he IRS first argues that section 510(c) does not authorize the subordination of administrative expenses. Based upon the plain language of section 726(a) this argument cannot prevail. The distributive scheme established by § 726 is expressly subject to the power of subordination pursuant to § 510.

*Accord In re F.A. Potts & Co.*, 114 B.R. 92 (Bkrtcy.E.D.Pa.1990). Accordingly, this Court must decline the IRS's invitation to rewrite the plain language of § 726(a) and concludes that administrative expenses (in this case tax penalties) are subject to equitable subordination.

■ *Second*, having determined that administrative expenses can be equitably subordinated, the question remains as to whether the Bankruptcy Court correctly concluded that the administrative expenses (the tax penalties) in this litigation should be so subordinated. Section 510(c) does not expressly state when a claim may be equitably subordinated; rather, that section provides that claims may be subordinated "under principles of equitable subordination." The legislative history to § 510(c) explains:

> It is intended that the term "principles of equitable subordination" follow existing case law and leave to the courts the development of this principle. To date, under existing law, a claim is generally subordinated only if the holder of such claim is guilty of inequitable conduct, or if the claim itself is of a status susceptible to subordination, *such as a penalty* ...

124 Cong.Rec. H11089 (Sept. 28, 1978) (statement of Rep. Edwards), *reprinted in*, 1978 U.S.C.C. & AN. 5787, 6452 (emphasis added); 124 Cong.Rec. S17406 (Oct. 6, 1978) (statement by Sen. DeConcini), *reprinted in* 1978 U.S.C.C. & AN. 6505, 6521 (emphasis added).[5] Herein, there is no hint or allegation that the IRS was guilty of inequitable conduct; therefore, the only question for this Court is whether a claim for a tax penalty is of the status susceptible to subordination.

■ Although the Sixth Circuit has not addressed the question,[6] other circuits have consistently held that claims for tax penalties are subject to equitable subordination, even in the absence of misconduct by the government. *See, e.g., Schultz Broadway Inn v. United States*, 912 F.2d 230 (8th Cir.1990); *Burden v. United States*, 917 F.2d 115 (3rd Cir.1990); *Matter of Virtual Network Services Corp.*, 902 F.2d 1246 (7th Cir.1990). These courts have held that a court must balance the equities before subordinating a tax penalty. For instance, in *Virtual Network*, the Seventh Circuit held that the district court correctly concluded that the equities tipped in favor of subordination because it was unfair to allow the tax penalties to come from the pockets of other creditors. *Id.* at 1250. In *Schultz*, the Eighth Circuit upheld the district court's decision to equitably subordinate tax penalties and commented that the decision "accords with the legislative history of the Bankruptcy Reform Act, which generally prefers claims for actual losses over punitive claims." 912 F.2d at 234.

After weighing the equities, the Bankruptcy Court concluded that principles of equitable subordination upheld the subordination of the tax penalties in this case. This Court concludes that the Bankruptcy Court reached the proper balance. The IRS's claim for tax

---

5. The Supreme Court has treated the statements, by Representative Edwards and Senator DeConcini, on the Bankruptcy Reform Act of 1978, as "persuasive evidence of congressional intent." *Begier v. IRS*, 496 U.S. 53, 64 n. 5, 110 S.Ct. 2258, 2265 n. 5, 110 L.Ed.2d 46 (1990). *See also, In re Mansfield Tire & Rubber Co.*, 942 F.2d 1055, 1058 n. 3 (6th Cir.1991).

6. In *In re Mansfield Tire & Rubber Co.*, 942 F.2d 1055, 1062 (6th Cir.1991), the Sixth Circuit quot-

ed the statement and held that an excise tax was not subject to equitable subrogation because the IRS was not guilty of inequitable conduct and the tax was not a penalty. However, the *Mansfield Tire* court did not suggest that a tax penalty is not subject to equitable subordination. Indeed, the *Mansfield Tire* court recognized that equitable subordination is appropriate "if the claim itself is of a status susceptible to subordination." *Id.*

penalties is unquestionably a penalty,[7] an additional assessment, so to speak, for the debtor's having failed to pay the taxes and the interest due on the taxes in a timely manner, sums which, unlike the statutory penalties, represent actual losses (or the loss of the use of money) to the IRS. The IRS has priority to its claims for unpaid taxes and for interest on those taxes; therefore, it will not suffer a pecuniary loss if it does not obtain priority for the tax penalties. The same cannot be said for other creditors; rather, those persons provided value to FTL and will not receive that for which they bargained if the IRS is to be given priority for sums which do not represent out of pocket losses to it. Accordingly, this Court concludes that the equities tip in favor of subordinating the IRS's claim for tax penalties in this case.

Based upon the foregoing, this Court affirms the Bankruptcy Court's decision to subordinate the IRS's tax penalties to the priority of the claims of general unsecured creditors. Judgment is to be entered in favor of the Appellee and against the Appellant.

The captioned cause is hereby terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

---

7. Before the adoption of the Bankruptcy Reform Act of 1978, tax penalties were specifically disallowed as claims against a bankrupt's estate. *Burden,* 917 F.2d at 117. In *Simonson v. Granquist,* 369 U.S. 38, 41, 82 S.Ct. 537, 539, 7 L.Ed.2d 557 (1962), the Supreme Court explained the rationale behind that disallowance:

> Tax penalties are imposed at least in part as punitive measures against persons who have been guilty of some wrong. Enforcement of

penalties against the estates of bankrupts, however, would serve not to punish the delinquent taxpayers, but rather their entirely innocent creditors.

*See also, In re Cassidy,* 983 F.2d 161, 164 (10th Cir.1992) ("The policy of protecting unsecured creditors from the bad conduct of the debtor is best implemented by avoiding burdening the claims of unsecured creditors with penalties imposed on the debtor.").